*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0307P (6th Cir.)
File Name: 03a0307p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

SHARON MAY ROCKWELL,
　　　　*Petitioner-Appellee,*

　　*v.*　　　　　　No. 00-1992

JOAN YUKINS,
　　　　*Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-71072—Avern Cohn, Senior District Judge.

Argued: December 11, 2002

Decided and Filed: August 27, 2003

Before: MARTIN, Chief Circuit Judge; NELSON,
BOGGS, BATCHELDER, DAUGHTREY, MOORE,
COLE, CLAY, GILMAN, GIBBONS, and ROGERS,
Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Laura Graves Moody, OFFICE OF THE
ATTORNEY GENERAL, Lansing, Michigan, for Appellant.
Craig A. Daly, Detroit, Michigan, for Appellee. **ON BRIEF:**
Laura Graves Moody, OFFICE OF THE ATTORNEY

GENERAL, Lansing, Michigan, for Appellant. Craig A.
Daly, Detroit, Michigan, for Appellee.

NELSON, J., delivered the opinion of the court, in which
MARTIN, C. J., BOGGS, BATCHELDER, GILMAN,
GIBBONS, and ROGERS, JJ., joined. CLAY, J. (pp. 12-29),
delivered a separate dissenting opinion, in which
DAUGHTREY, MOORE, and COLE, JJ., joined.

———————————

## OPINION

———————————

DAVID A. NELSON, Circuit Judge. The petitioner in this
habeas corpus action, Sharon Rockwell, was convicted at trial
in a state court of conspiring with her sons to murder the
boys' father, her husband. A federal writ of habeas corpus
was subsequently granted on the ground that her Sixth
Amendment right to present a complete defense precluded
the state trial court from barring evidence that Mr. Rockwell
had abused his sons sexually. Under the legal standard
prescribed by the Antiterrorism and Effective Death Penalty
Act of 1996, the writ should not have been issued unless
exclusion of the evidence in question involved an
"unreasonable" application of, or was contrary to, federal law
clearly established by the United States Supreme Court.
Concluding that the result reached in the state court passes
muster under the statutory test, we shall reverse the grant of
habeas relief.

I

As we noted in an earlier appeal in this case, *Rockwell v.
Yukins*, 217 F.3d 421, 422-23 (6th Cir. 2000), Sharon and
Edward Rockwell had three sons. One of the sons, acting
with two friends, attempted to kill Mr. Rockwell by cutting
the brake lines on his car. The attempt failed. Then, in a
second unsuccessful attempt on Mr. Rockwell's life, the two

friends hit him on the head with a baseball bat. Although Mrs. Rockwell was not present on either occasion, she had engaged in discussions with one or more of her sons about killing Mr. Rockwell. On the strength of these discussions, the State of Michigan charged Mrs. Rockwell with conspiracy to commit murder.

Mrs. Rockwell's defense, as her lawyer described it at a pretrial hearing, was that her participation in the talk of killing Mr. Rockwell was not intended to further an actual murder; rather, according to counsel, Mrs. Rockwell's purpose had been to let the boys vent the extreme and abiding hatred they harbored against their father for having abused them, sexually and otherwise, when they were younger. "[Mrs. Rockwell] felt in her heart that the only way she could keep the situation under control," defense counsel explained, "was to allow the boys to talk and fantasize about [killing the hated Mr. Rockwell.]" Far from agreeing to a murder, the theory went, Mrs. Rockwell hoped to forestall a murder through what her lawyer seems to have viewed as some sort of talk therapy.

In connection with this "therapy defense," as we characterized it in our earlier opinion, Mrs. Rockwell wanted to show at trial that Mr. Rockwell had sexually abused his sons. The prosecution wanted to exclude evidence of the alleged abuse. The state trial court ordered briefing and heard argument on the admissibility of the evidence of abuse, after which it ordered the evidence excluded as not "material" under Mich. Rule of Evid. 404.[1]

When the case went to trial, Mrs. Rockwell elected not to take the stand. The jury returned a verdict of guilty, and Mrs.

---

[1]Although the prosecution had cited Rule 404 in argument, its relevance is not readily apparent. Rule 404 provides that evidence of a person's character is generally inadmissible for the purpose of proving that the person acted in conformity therewith on a particular occasion.

Rockwell was sentenced to imprisonment for life. An appeal to the Michigan Court of Appeals followed.

The Court of Appeals affirmed the conviction, succinctly explaining its rationale as follows:

"We find no abuse of discretion in the trial court's exclusion of evidence of the victim's alleged prior acts of abuse against defendant's and the victim's children. *People v. Watkins*, 176 Mich. App. 428; 440 NW2d 36 (1989). Defendant was merely limited in the method with which to present her defense and not deprived [of] the opportunity to present the same. Although marginally relevant, the evidence was properly excluded under MRE 403."[2]

Mrs. Rockwell applied to the Michigan Supreme Court for leave to appeal the affirmance of her conviction, but further review was denied.

Mrs. Rockwell then filed her habeas action in the United States District Court for the Eastern District of Michigan. The initial pleading raised two issues, insufficiency of the evidence and improper exclusion of the evidence of sexual abuse, both of which had been exhausted in the state courts. The district court eventually granted Mrs. Rockwell leave to amend her petition to include an unexhausted claim as well. Following a hearing at which arguments were presented on the merits, the district court granted the writ on the ground that the state trial court's decision to exclude evidence of the alleged sexual abuse clearly violated Mrs. Rockwell's constitutional right to present a defense – and "[n]o reasonable jurist could conclude otherwise."

---

[2]Rule 403 – which had also been cited in argument before the state trial court – provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

The soundness of this proposition was not decided in the initial appeal to our court. The panel that heard the appeal vacated the judgment on the ground that the district court should not have reviewed a "mixed" petition containing an unexhausted claim in addition to the exhausted claims. The first panel remanded the case with a suggestion that the district court could reenter its original decision after allowing Mrs. Rockwell to dismiss her unexhausted claim. See *Rockwell v. Yukins*, 217 F.3d at 425.

On remand, the district court accepted this suggestion. Mrs. Rockwell moved for dismissal of her unexhausted claim and reentry of the habeas judgment, and the district court granted the motion.

The warden again appealed to our court. Reaching the merits of the case, a divided three-judge panel reversed the district court's judgment. The full court then voted to rehear the case en banc. Supplemental briefs having been filed, and the case having been reargued, the appeal is now ready for decision by the full court.

## II

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), subsection (d) of 28 U.S.C. § 2254 provides, in relevant part, as follows:

"(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ."

This version of the statute applies to habeas applications filed, as Mrs. Rockwell's was, after April 24, 1996, the effective date of AEDPA. See *Lindh v. Murphy*, 521 U.S. 320 (1997).

The statute means what it says. See *Williams v. Taylor*, 529 U.S. 362, 402-13 (2000). What the statute says, to repeat, is that habeas relief may not be granted unless the state court's decision was either "contrary to . . . clearly established federal law, as determined by the Supreme Court of the United States,"[3] or "involved an unreasonable application of . . . [such] law."

Mrs. Rockwell does not contend that the affirmance of her conviction by the state court of appeals was "contrary to" clear Supreme Court caselaw. She does contend, however, that it involved an unreasonable application of such law.

For this contention to be accepted, Mrs. Rockwell must do more than persuade us that the Michigan judiciary's application of federal law was incorrect. As Justice O'Connor said, speaking for the Court in *Williams*:

"In § 2254(d)(1), Congress specifically used the word 'unreasonable,' and not a term like 'erroneous' or 'incorrect.' Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be *unreasonable*." *Williams,* 529 U.S. at 411 (emphasis supplied).

---

[3] The condition of this "contrary to" clause would be met if "the state court arrive[d] at a conclusion opposite to that reached by [the U.S. Supreme] Court on a question of law or if the state court decide[d] a case differently than [the U.S. Supreme Court has] on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413.

"[A]n unreasonable application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Id.* at 412 (emphasis in original). And in making the "unreasonable application" inquiry, we "should ask whether the state court's application of clearly established federal law was 'objectively' unreasonable." *Id.* at 409.

In Mrs. Rockwell's case, as we have seen, the Michigan Court of Appeals concluded that the probative value of the evidence of Edward Rockwell's alleged abuse of his sons was substantially outweighed by the danger that unfair prejudice would ensue were the evidence to be admitted. This conclusion may or may not have been erroneous, but we cannot say that it represented an objectively unreasonable application of clearly established Supreme Court precedent.

A Supreme Court decision that the district court found "particularly instructive," *Davis v. Alaska*, 415 U.S. 308 (1974), held that the defendant in a burglary case had a constitutional right to cross-examine a crucial prosecution witness about a juvenile burglary adjudication for which the witness was on probation, notwithstanding a state rule making evidence of juvenile adjudications inadmissible. The Court emphasized that "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested," adding that the juvenile's testimony "provided 'a crucial link in the proof . . . of [the defendant's] act.'" *Id.* at 316 and 317 (citation omitted). "In this setting," the Court concluded, ". . . the [Sixth Amendment] right of confrontation is paramount to the State's policy of protecting a juvenile offender." *Id.* at 319.

In the case at bar, by contrast, the evidence of sexual abuse was not being proffered to attack the believability of a crucial witness against Mrs. Rockwell. The rule under which the trial court excluded the evidence, moreover, is not aimed at protecting juvenile offenders. The interests at stake in this case are entirely different than those at stake in *Davis*. Because *Davis* is readily distinguishable, and because the

gloss Mrs. Rockwell would have us put on the case flies in the face of a line of authority (to which we shall turn shortly) culminating in *United States v. Scheffer*, 523 U.S. 303 (1998), we reject the claim that the Michigan court's decision represented an unreasonable application of *Davis*.

Mrs. Rockwell attempts to extract from *Davis* and other Supreme Court cases a general rule that a criminal defendant must be permitted to present any evidence that she deems critical to her defense. In this connection she cites *Crane v. Kentucky*, 476 U.S. 683 (1986), which holds that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Id.* at 690 (citations omitted).

But the Supreme Court has made it perfectly clear that the right to present a "complete" defense is not an unlimited right to ride roughshod over reasonable evidentiary restrictions. A defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Rather, she "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

As the Supreme Court explained in *Scheffer*:

"state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" 523 U.S. at 308 (citations omitted).

A defendant's right to present a "complete" defense, in other words, does not automatically trump state evidentiary rules.

The competing interests must be balanced, and "a defendant's interest in presenting . . . evidence may [have to] bow to accommodate other legitimate interests in the criminal trial process." *Id.* (Internal quotation marks and citations omitted.)

It was not objectively unreasonable, in our view, for the Michigan court to conclude that "other legitimate interests in the criminal trial process" outweighed Mrs. Rockwell's interest in presenting evidence of her husband's prior conduct. The evidence of sexual abuse posed a substantial danger of unfair prejudice – a risk that the jury would be tempted to acquit Mrs. Rockwell not because of any sense that she was innocent of conspiring with her sons to kill Mr. Rockwell but because of a sense that killing would be too good for such a man.

In addition to the danger of unfair prejudice, the sexual abuse evidence presented a risk of undue delay and confusion of the issues. The facts that Mrs. Rockwell wished to introduce into evidence were disputed. Resolution of this tangential dispute would have complicated the trial and could have tended to mislead the jury.

It is true that the chances of the jury's accepting Mrs. Rockwell's "therapy defense" may have been diminished by exclusion of the sexual abuse evidence. But it would not be correct to say that Mrs. Rockwell was deprived of her defense. Exclusion of the evidence would not have prevented her from testifying that her sons hated their father because of his unspeakable behavior toward them over the years.[4] It

---

[4] By the same token, the ruling did not bar Mrs. Rockwell from simply testifying that the boys had an intense hatred of their father. If such testimony had gone unchallenged, the jury might well have accepted it. If the prosecution had cross-examined Mrs. Rockwell as to the basis of the hatred, on the other hand, or if it had presented the husband as a witness and evoked a denial that he had done anything to cause the boys to hate him, the door would then have been opened, in all probability, for

would not have barred her from telling the jury that she thought such talk had a healthy prophylactic effect; that she did not think it would lead to overt action; and that she had never been a party to any mutual understanding or agreement to commit murder. The court's ruling barred Mrs. Rockwell only from testifying that her husband's abuse of her sons was sexual in nature.

Explication of the sexual aspect of the abuse, in short, did not go to the essence of the "talk therapy" defense. Rather, it was a detail – an important detail, to be sure, but a detail nonetheless.

It is far from certain, moreover, that presentation of this detail to the jury would have increased the likelihood of Mrs. Rockwell's acquittal. The more heinous Mr. Rockwell's offenses, the jury could reasonably have concluded, the more likely it was that Mrs. Rockwell understood the talk of murder to be in earnest. If, on the other hand, testimony that the abuse was sexual would have made the jury more likely to acquit Mrs. Rockwell, it might well have done so on the improper basis mentioned above – a sense that the conspiracy was justified – rather than on any legitimate basis. In these circumstances, we believe it was not unreasonable for the Michigan Court of Appeals to weigh the competing interests as it did.[5]

---

Mrs. Rockwell to present evidence of the alleged sexual misconduct.

[5] Even if the Michigan court acted unreasonably in concluding that exclusion of the sexual abuse evidence was constitutional, any error was probably harmless. There was evidence at trial that Mrs. Rockwell herself had attempted to acquire a bomb, that she had continued to discuss killing her husband even after she knew there had been an actual attempt on his life, and that, on the night of the second attempt, she had taken her younger children out of the house so that they would not be present during the attack. This evidence severely undercuts the defense theory that Mrs. Rockwell believed her sons were merely engaging in harmless talk.

The decision made by the Michigan court was a judgment call of the sort that judges make all the time. Some members of this court, had they been on the state bench, would have made a different call. We cannot say they would have acted unreasonably in doing so, particularly in view of the fact that the danger of undue prejudice could have been minimized by a cautionary instruction. See *Lewis v. Wilkinson*, 307 F.3d 413, 422 (6th Cir. 2002). What we can say, however, is that the call made by the Michigan court was well within that court's discretion. The decision to exclude evidence of the sexual nature of the victim's mistreatment of his sons did not, in our opinion, involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

The decision of the district court is **REVERSED**, and the case is **REMANDED** with instructions to dismiss the petition.

---

## DISSENT

---

CLAY, Circuit Judge, dissenting. The majority's conclusion that the Michigan Court of Appeals did not unreasonably apply Supreme Court precedent in rejecting Petitioner's claim that she was denied her Fifth Amendment right to present a complete defense rests upon an interpretation of § 2254(d)(1) that has no basis in the law. As the term "unreasonable" is commonly known and applied in the jurisprudence, the state appellate court's decision represented an objectively unreasonable application of the Court's precedent.

Petitioner sought to introduce evidence of Edward Rockwell's alleged sexual abuse of his sons for the purpose of establishing that she engaged in talk of killing Rockwell with her sons, not for the purpose of forming an agreement to kill, but for the purpose of allowing the boys to vent their anger and hatred of Rockwell. Thus, evidence of Rockwell's alleged sexual abuse provided the substantive basis of Petitioner's defense and, without the evidence, Petitioner was prevented from establishing any defense at all. The state appellate court's finding that omission of this evidence merely limited Petitioner in the "method" of presenting her defense thereby constitutes an objectively unreasonable application of Supreme Court precedent. As a result, the state appellate court's conclusion that the evidence was properly excluded on evidentiary grounds constitutes an objectively unreasonable application of the Court's precedent as well. I would therefore affirm the district court's order granting the petition for a writ of habeas corpus filed by Petitioner, Sharon May Rockwell.

## I. "Unreasonable Application" Prong of 28 U.S.C. § 2254(d)(1)

This Court's review of the Michigan Court of Appeals' decision regarding Petitioner's claim is circumscribed by § 2254(d)(1) of the Antiterrorism and Effective Death Penalty Act of 1966 ("AEDPA"), meaning that the state court's decision will not be disturbed on habeas review unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." In this case, it is the "unreasonable application" prong of § 2254(d)(1) that guides our review. Under this prong, "'a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Lockyer v. Andrade*, ___ U.S. ___, 123 S. Ct. 1166, 1174 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Said differently, "a federal court may grant habeas relief [under this prong] based on an application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Id.* (citing *Williams*, 529 U.S. at 407).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, ___ U.S. ___, 123 S. Ct. 1848, 1853 (2003) (alteration in *Price)* (quoting *Bell v. Cone*, 535 U.S. 685, 699 (2002)). Rather, "[i]n order for a federal [habeas] court to find a state court's application 'unreasonable,' the state court's decision must have been more than incorrect or erroneous[,] [it] must have been 'objectively unreasonable.'" *Wiggins v. Smith*, ___ U.S. ___, 123 S. Ct. 2527, 2534 (2003) (citing *Lockyer*, 123 S. Ct. at 1175; *Williams*, 529 U.S. at 409); *see also Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (*per curiam*).

We are not without guidance, however, as to when a state court's decision rises to the level of being "objectively unreasonable" for purposes of granting a petitioner habeas relief under § 2254(d)(1). In *Wiggins v. Smith*, 123 S. Ct. at 2538-539, a death penalty case, the Supreme Court held that the Maryland Court of Appeals unreasonably applied the governing principles of *Strickland v. Washington*, 466 U.S. 668 (1984) in rejecting the petitioner's claim that he had been denied his Sixth Amendment right to effective assistance of counsel. The Court found that the state court of appeals' conclusion that counsel's performance was within professional norms was objectively unreasonable under *Strickland* inasmuch as counsel had failed to make a reasonable investigation into the petitioner's social history. *Id.* (noting that under *Strickland*, "strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation") (citation and internal quotation marks omitted). This, in turn, made the state court's deference to counsel's strategic decision not to present mitigating evidence of the petitioner's social history objectively unreasonable as well. *Wiggins*, 123 S. Ct. at 2538-539 ("[C]ounsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentencing strategy impossible.").

The *Wiggins* majority rejected the dissent's contention that "the Court's hands [were] tied under § 2254(d), by the state court's factual determinations that [the petitioner's] trial counsel *did* investigate and *were* aware of [the petitioner's] background." *Id.* at 2539 (internal quotation marks and citation omitted; emphasis in original). The Court reasoned that the dissent's position was unfounded because the state appellate court's conclusion that "the *scope* of counsel's investigation into petitioner's background met the legal standards set in *Strickland* represented an objectively unreasonable application of our precedent." *Id.* (emphasis in original). In other words, the state court's finding that counsel investigated and knew of the petitioner's social

history did not tie the Court's hands because the *scope* of counsel's investigation was objectively unreasonable under the principles of *Strickland*. *Id.*

Thus, *Wiggins* instructs us that while we defer to state court decisions under § 2254(d)(1), the deference is not absolute inasmuch as a petitioner may be afforded habeas relief when the state court's decision reaches a result not supported by Supreme Court precedent. *See id.*

## II.   Michigan Court of Appeals' Ruling

The Michigan Court of Appeals issued a divided ruling in this case. While the two-judge majority found that Petitioner was not entitled to relief on her claim that the trial court abused its discretion in excluding evidence of Edward Rockwell's prior acts of alleged sexual abuse against Rockwell's and Petitioner's children, a dissenting judge sharply disagreed. *See People v. Rockwell*, No. 124359 (Mich. Ct. App. May 23, 1991) (unpublished).

Specifically, as to Petitioner's claim on this issue, the two-judge majority opined:

> We find no abuse of discretion in the trial court's exclusion of evidence of the victim's alleged prior acts of abuse against defendant's and the victim's children. *People* v *Watkins*, 176 Mich App 428; 440 NW2d 36 (1989). Defendant was merely limited in the method with which to present her defense and not deprived the opportunity to present the same. Although marginally relevant, the evidence was properly excluded under MRE 403.

*Id.* In sharp contradistinction, the dissenting judge found Petitioner's claim on this issue meritorious and would have reversed Petitioner's conviction and remanded for a new trial. That judge persuasively refutes the majority's argument as follows:

The majority opinion agrees that the evidence in question is relevant. If it is relevant it is only so because it relates to a legally recognized defense. That defense is that defendant's participation in the conversations was not, from her perspective, part of the conspiracy or agreement to commit murder, but, rather, it was her way of allowing her sons to ventilate their anger at the sexual abuse her husband had been perpetrating on the boys over a period of time. Her defense might not be accepted by a jury and her belief, if, indeed, she had such a belief, that the boys should be allowed to express their rage through such conversations may have been misguided. Nevertheless, I believe she should have been allowed to tell her version of the events to the jury and to submit evidence it support of it.

I come to this conclusion because I believe her version goes to the very heart of her defense, i.e., that there was no conspiracy between her and anyone else. The absence of a conspiracy, i.e., an agreement, depends on whether she had a factual basis for allowing the boys to express their anger in this manner and this, in turn, depends on whether the sexual abuse actually occurred. If it did not occur, her defense disappears and if it did occur, she has an explanation, however tenuous it might be, for why she participated in the conversations and for her theory that she was not seriously conspiring to murder her husband.

From this perspective, the need to establish the sexual abuse becomes crucial. I would not want the trial to deteriorate into a criminal sexual conduct case with each allegation of sex abuse being proved and then being disproved by other witnesses but I am satisfied that the trial judge can place adequate controls and limits on the flow of testimony given the purpose of such testimony. It would be sufficient for the trial judge to allow enough evidence to establish that defendant's view of the situation was supported by an adequate factual basis.

*If all she can show is that her behavior was based on a vague and generalized hatred for her husband by herself and by the boys, she is deprived of the essence of her defense. A defendant must be permitted to offer proofs of each element of a valid defense.* See *Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967); *People v Callington*, 123 Mich App 301, 305; 333 NW2d 260 (1983). I wish to emphasize that I do not take the position that defendant would be justified in conspiring to kill her husband if he had perpetrated sexual abuse upon the boys. Rather, my position is that she must be permitted to argue and submit proofs that the existence of the sexual abuse formed a basis for her belief that she was not a knowing participant in a conspiracy at all.

I would reverse and remand for a new trial.

*Id.* (Shepherd, J., dissenting) (emphasis added).

## III. Analysis

At the outset, it should be noted that although the state appellate court's reason for concluding that the evidence was properly excluded under Rule 403 is significant, what is most significant is the court's finding that the exclusion of Rockwell's sexual abuse of his sons merely limited the "method" by which Petitioner could present her defense. This is so because the state appellate court made an objectively unreasonable determination under Supreme Court precedent that Petitioner was only limited in the "method" and not the substance of her defense through the exclusion of this evidence, which thereby rendered the court's conclusion that the evidence was properly excluded under Rule 403 objectively unreasonable as well. Said differently, although it is true that Supreme Court precedent indicates that the right to present a defense is at times limited by reasonable evidentiary rules, if in deciding to exclude evidence under an evidentiary rule the court makes an objectively unreasonable

determination as to Petitioner's ability to present her defense in the absence of this evidence, the decision to exclude the evidence under the rule is itself unreasonable. *See Wiggins*, 123 S. Ct. at 2538-539 (holding that if the court makes an unreasonable determination as to the basis for counsel's strategy, the decision to defer to counsel's strategic choice is itself unreasonable).

### A.   Petitioner's Right to Present a Defense

The state appellate court held that Petitioner was not denied her constitutional right to present a defense because the exclusion of evidence regarding Rockwell's sexual abuse "merely limited [] the method" by which Petitioner could present her defense theory. Under clearly established Supreme Court precedent, the state appellate court's holding was objectively unreasonable because evidence of Rockwell's alleged sexual abuse provided the *substantive basis* for Petitioner's defense such that without this evidence Petitioner was left with no defense at all.

The Court has long held that an accused's right to "establish a defense" is a "fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967). In *Washington*, the Court was called upon for the first time "to decide whether the right of an accused to have compulsory process for obtaining witnesses in his favor, guaranteed in federal trials by the Sixth Amendment, is so fundamental and essential to a fair trial that it is incorporated in the Due Process Clause of the Fourteenth Amendment." *Id.* at 17-18. Relying on *In re Oliver*, the Court observed that, among other things, an accused's right "'to offer testimony'" is a basic component of his right to offer a defense. *Id.* at 18 (quoting *In re Oliver*, 333 U.S. 257, 273 (1948)). The Court therefore concluded that "[t]he right to offer testimony of witnesses and to compel their attendance [] is in plain terms the right to present a defense" because "[j]ust as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his

own witnesses to establish a defense." *Id.* at 19. It is then up to the jury to "decide where the truth lies." *Id.*

The Court spoke again on the constitutional significance of allowing a defendant to present testimony in connection with his defense in *Crane v. Kentucky*, 476 U.S. 683 (1986). Specifically, in *Crane*, the Court held that the exclusion of testimony surrounding the circumstances of a defendant's confession deprived the defendant of his fundamental right—whether under the Due Process Clause of the Fourteenth Amendment or under the Compulsory Process or Confrontation Clauses of the Sixth Amendment—to present a defense. *Id.* at 690-91. The Court reasoned that the opportunity to be heard "would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence." *Id.* As a result, the Court concluded that the "exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful adversarial testing.'" *Id.* at 690-91 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

In *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974), the Court examined an accused's right to present a defense in the context of the cross-examination of witnesses offered against him. The Court recognized that "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested[,]" and that several means of discrediting a witness are essential to effective cross-examination. *Id.* at 316. The petitioner in *Davis* sought to discredit a government witness by showing the existence of possible bias and prejudice. *Id.* Specifically, the petitioner sought to question a key witness for the prosecution regarding the witness' adjudication as a juvenile delinquent and his probation status in order to demonstrate that the witness identified the petitioner as the perpetrator out of fear of possible probation revocation. *Id.* at 310-11. The trial court refused to allow the petitioner to cross-examine the witness as

to his probationary status as a juvenile offender based on a state statute protecting the anonymity of juvenile offenders. *Id.* at 311. As a result, the petitioner's counsel "did his best" to expose the witness's state of mind at the time, but much of the witness' testimony went unchallenged. *Id.* at 312-14. The petitioner was convicted, and his appeal made its way to the Alaska Supreme Court which affirmed the petitioner's conviction, concluding that "'counsel for the defendant was able adequately to question the youth in considerable detail concerning the possibility of bias or motive.'" *Id.* 314-15.

The Supreme Court granted certiorari limited to the question of whether the petitioner was denied his constitutional right to adequately cross-examine the witness, which "turn[ed] on the correctness of the Alaska court's evaluation of the 'adequacy' of the scope of cross-examination permitted." *Id.* The Court reversed, finding that it could not "accept the Alaska Supreme Court's conclusion that the cross-examination that was permitted defense counsel was adequate to develop the issue of bias properly to the jury." *Id.* at 318. The Court reasoned:

> While counsel was permitted to ask [the witness] whether he was biased, counsel was unable to make a record from which to argue why [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness or, as the prosecutor's objection put it, a 'rehash' of prior cross-examination. On these facts, it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.

*Id.* (emphasis added).

Against this backdrop, it is clear that the Michigan Court of Appeals' ruling—that exclusion of Rockwell's sexual abuse of the boys "merely limited [Petitioner] in the method" by which she could present her defense—was objectively unreasonable inasmuch as this evidence was at the very *substance* of Petitioner's defense. Through the exclusion of this evidence, Petitioner was deprived of her right to present testimony in connection with and in support of her defense pursuant to *Washington* and *Crane,* and she was denied her right to effectively cross-examine key witnesses and demonstrate the accuracy and truthfulness of her defense under *Davis*, all of which ultimately denied Petitioner her due process right to present a defense.

Indeed, at the hearing on the motion in limine before the trial court, Petitioner's counsel argued the substantive significance of the sexual abuse evidence as it related to Petitioner's defense:

Your Honor, in this case, my client, Sharon Rockwell, is charged with conspiracy to murder Edward Rockwell, her husband. The facts will show in this case that there were several conversations throughout the period of the conspiracy in which my client and the other conspirators and the other parties discussed death, ways of accomplishing death of father.

The prosecution intends to show that my client engaged in these conversations in an effort to convince the jury that my client is guilty of conspiring to murder.

* * *

My client knew of the extreme—and I underline—extreme hatred her children had for their father. She knew this because she lived with it every day she raised the children. Her defense, you Honor, is that

she knew the situation was a volatile, explosive situation and she felt in her heart that the only way she could keep this situation under control was to allow the boys to talk and fantasize about these things that were apparently in their minds. And, therefore, her attitude was talk will diffuse the situation rather than silence causing an explosion. So her defense is that she did not make an agreement with anyone. She allowed this talk because it was just talk.

Now, the sex acts involved in this case and father's prior conduct in treating his family so shabbily will show that this hatred was real and will show that why this talk was engaged in.

(Trial Tr., Vol. I at 12-13.) The following colloquy then occurred between the trial court and Petitioner's counsel:

THE COURT: Assuming everything you say is true, [] assuming that there was hated [sic] based upon all these activities, what type of a legal defense is it?

* * *

PETITIONER'S COUNSEL: Because mother [Petitioner] says there was not an agreement to murder. Mother says this was nothing more than talk.

THE COURT: Then how is your client harmed by not including the sexual—prior sexual conduct?

PETITIONER'S COUNSEL: Because then a finder of fact says, well, if there was—You know, the finder of fact concludes that this is just nothing more than a smoke screen by the Defendants. My client must show

that, in fact, this is true, her defense is true, because otherwise, a rational finder of fact can believe that mother is just making up a story to get out of something.

* * *

My client's argument is that there was no agreement; this was just talk. And that's very critical in this case because the evidence and the facts will show that this talk occurred because of this extreme hatred.

Her entire defense is built around showing that, in fact, this was nothing but talk, and to disallow the evidence to come in makes it—makes her defense one so weak that it is of dubious nature at best.

(*Id.* at 14, 24.) Ruling on the record, the trial court excluded the evidence, stating as follows: "The Court will not allow inquiry into the collateral issues with regard to sexual matters. The Court finds that it is not material under [MRE] 404." (Trial Tr., Vol. I at 24.)

Thus, the exclusion of this evidence did not merely limit Petitioner "in the method" by which she could present her defense; rather, the exclusion of this evidence prevented Petitioner from *establishing* her defense. As argued by her counsel before the trial court, testimony of Rockwell's sexual abuse provided the very basis as to why Petitioner allowed and participated in conversations with her sons regarding Rockwell's death, and why these conversations did not amount to an agreement to kill. Petitioner could not establish her defense without such testimony, which she could have introduced through her own testimony as well as that of other

witnesses, including her co-defendants who testified at trial. In other words, the trial court's ruling deprived Petitioner of "the right to present [her] own witnesses to establish a defense[,] thus depriving Petitioner of a "fundamental element of due process of law." *Washington*, 388 U.S. at 19. Accordingly, the state appellate court's ruling that Petitioner was merely limited in the method by which she could present her defense was objectively unreasonable under *Washington*.

The same may be said of the state appellate court's ruling under *Crane v. Kentucky*, inasmuch as without the evidence of Rockwell's abuse, Petitioner's defense had no foundation and "deprive[d] [Petitioner] of the basic right to have the prosecutor's case encounter and 'survive the crucible of meaningful adversarial testing.'" *Crane*, 476 U.S. at 690-91 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)). Similar to *Crane*, evidence of why Petitioner participated in the talk of Rockwell's death—that it was a means of allowing the boys to vent their hatred for their father that had resulted from his sexual abuse—was "central to [Petitioner's] claim of innocence" because without the evidence as to why the boys hated their father, Petitioner's defense had little chance of succeeding. *See id.* at 691. Indeed, without more, Petitioner's "talk therapy" defense may very well have worked against Petitioner inasmuch as the jury may have believed that Petitioner's sons hated their father because he demanded that they excel in school, or because he strictly prevented them from using drugs or alcohol. In other words, without more, the jury may have thought the sons hated Rockwell because he was being a *good*, albeit perhaps strict, father, such that Petitioner's approval of the boys speaking of killing Rockwell as a form of "talk therapy" may have hurt her defense as opposed to helping it. Without knowing the reason behind the boys' hatred of Rockwell, the jury may also have believed that they hated him at Petitioner's behest, thereby adding credence to the prosecution's claim that Petitioner formed an agreement with her sons to kill Rockwell. Thus, evidence of why the boys hated their father and why Petitioner allowed or participated in talk of

Rockwell's death was "all but indispensable to any chance of [her defense] succeeding" thereby rendering the state appellate court's ruling objectively unreasonable under *Crane*. *Id.* at 691.

*Davis v. Alaska* provides further support as to why the state appellate court's ruling that Petitioner was merely limited in the "method" by which she could present her defense was objectively unreasonable. This is so because, as indicated, the Court in *Davis* held that "the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness'] testimony which provided a crucial link in the proof . . . of petitioner's act." *Id.* at 317 (internal quotation marks and citation omitted; emphasis in original). The Court reasoned that "[t]he accuracy and truthfulness of [the key witness'] testimony were key elements in the State's claim against the petitioner." *Id.*

The accuracy and truthfulness of testimony provided by the prosecution's witnesses in connection with Petitioner's participation in discussions to kill Rockwell were key elements in the state's conspiracy case against Petitioner. Indeed, without such evidence, the state would have been at a loss in proving that Petitioner formed an agreement to kill. For example, prosecution witness Peter Earl Granger, who identified himself as a family friend, testified at length that he had been privy to discussions that Petitioner had with her sons about killing Rockwell. (Trial Tr. Vol. IV. at 96-117.) If Petitioner had been allowed to cross-examine Granger as to the context or circumstances under which these discussions to kill arose—the boys' hatred of Rockwell due to his alleged sexual abuse—Granger's statements may have served to aid Petitioner and not the state. Similarly, co-defendant Jeffrey Greene, the young man upon whom Rockwell had allegedly made a sexual advance on the night in question, testified at trial; and had Petitioner been allowed to question Greene as to Rockwell's history of sexual abuse on the Rockwell children, Petitioner's "talk therapy" defense would have

gained credence thus making it less "speculative." *Davis*, 415 U.S. at 317-18. Accordingly, *Davis* is further indication that excluding evidence of Rockwell's sexual abuse deprived Petitioner of the substance of her defense, making the state appellate court's determination that Petitioner was merely limited in the "method" of presenting her defense objectively unreasonable.[1]

## B.    Excluding the Evidence Under Rule 403

The majority contends that the Michigan Court of Appeals excluded evidence of Rockwell's sexual abuse of his sons because the court found that the probative value of the evidence was substantially outweighed by the danger that unfair prejudice would have ensued had the evidence been admitted. The majority goes on to hold that it was not objectively unreasonable for the state appellate court to exclude the evidence on this basis because, "[t]he evidence of sexual abused posed a substantial danger of unfair prejudice—a risk that the jury would be tempted to acquit Mrs. Rockwell not because of any sense that she was innocent of conspiring with her sons to kill Mr. Rockwell, but because of a sense that killing would be too good for such a man." However, the majority's conclusion in this regard is based on pure speculation and what amounts to an inappropriate de novo review of the case inasmuch as the Michigan Court of Appeals' two-judge majority merely stated that "[a]lthough marginally relevant, the evidence was properly excluded under MRE 403." Indeed, the same be said for the majority's speculation that the evidence was properly excluded under Rule 403 because it would have complicated the trial or have tended to mislead the jury. There is nothing to support this

---

[1] The majority's conclusion that *Davis* is "readily distinguishable" flies in the face of habeas review under the unreasonable application prong of § 2254(d)(1) inasmuch as under this prong, relief may be granted "based on an application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 123 S. Ct. at 1174.

conclusion, particularly where the decision whether to admit the evidence was decided in a motion in limine and the trial court could easily have limited the parameters of the evidence while cautioning the jury as to the scope of its consideration.

Michigan's Rule of Evidence 403 is identical to Federal Rule of Evidence 403 and provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MICH. R. EVID. 403. Thus, the Michigan Court of Appeals may have excluded the evidence under Rule 403 for any of the reasons provided under the rule. Indeed, there is nothing in the state court's majority opinion to indicate that it excluded the evidence because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.[2] In fact, when considering the sentence in the state appellate court's opinion immediately proceeding the sentence where it is found that the evidence was properly excluded under Rule 403—"Defendant was merely limited in the method with which to present her defense and not deprived the opportunity to present the same"—it logically follows that evidence was excluded as being cumulative.

That aside, the state appellate court's ruling that the evidence was properly excluded under Rule 403, for whatever reason, is objectively unreasonable inasmuch as its conclusion that Petitioner was "merely limited in the method with which to present her defense and not deprived the opportunity to present the same" was in itself objectively unreasonable. *See Wiggins*, 123 S. Ct. at 2538-539 (concluding that the state

court of appeals overall application of *Strickland* was objectively unreasonable because 1) the court's finding that defense counsel had adequately investigated the petitioner's background was objectively unreasonable under *Strickland* which 2) thereby made the state court's subsequent deference to counsel's strategic choice objectively unreasonable as well).

It is true, as the majority contends, that the Supreme Court has held that a defendant's right to present relevant evidence is subject to reasonable restrictions for the purpose of accommodating "'other legitimate interests in the criminal trial process.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)). To the extent that the Michigan Court of Appeals excluded the evidence under Rule 403, for whatever reason, it would appear that under the deferential standard set forth by AEDPA, this Court would be in a position to conclude that the state appellate court's decision was not unreasonable. However, inasmuch as the state court was objectively unreasonable in concluding that exclusion of the evidence merely denied Petitioner the "method" by which she could present her defense, its conclusion that the evidence was properly excluded under Rule 403 was objectively unreasonable as well.[3] *See Wiggins*, 123 S. Ct. at 2538-539; *see also Scheffer*, 523 U.S. at 308 (recognizing that it is unconstitutionally arbitrary or disproportionate to exclude evidence if, in doing so, an accused's weighty interest is infringed).

---

[2] There is nothing in the trial court's decision granting the state's motion in limine to indicate that the evidence was excluded because its probative value was substantially outweighed by the danger of unfair prejudice inasmuch as the state trial court excluded the evidence under Michigan Rule of Evidence 404. (J.A. at 36.)

[3] Because the denial of her right to present a defense would be "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it," *see Davis v. Alaska*, 415 U.S. 308, 318 (1974), the majority's contention that such error would have been harmless is unfounded.

## IV.  Conclusion

The Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). Because the exclusion of evidence regarding Rockwell's sexual abuse deprived Petitioner of her opportunity to be heard for purposes of establishing a defense and claiming her innocence, the Michigan Court of Appeals' ruling that Petitioner was merely limited in the "method" of presenting her defense was objectively unreasonable, thereby making its ruling that the evidence was properly excluded under Rule 403 objectively unreasonable as well.  I therefore would affirm the district court's grant of Petitioner's application for a writ of habeas corpus, and respectfully dissent.