RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 17-1666

JOSETTE BUENDIA,

*Defendant-Appellant.*

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cr-20211-1—George Caram Steeh, District Judge.

Argued: March 14, 2018

Decided and Filed: May 15, 2018[*]

Before: SILER, ROGERS, and LARSEN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Wade G. Fink, WADE FINK LAW, P.C., Birmingham, Michigan, for Appellant. Shane Cralle, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Wade G. Fink, WADE FINK LAW, P.C., Birmingham, Michigan, Kimberly W. Stout, Birmingham, Michigan, for Appellant. Shane Cralle, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

───────────────

[*]This decision was originally filed as an unpublished opinion on May 15, 2018. The court has now designated the opinion for publication.

---

**OPINION**

---

ROGERS, Circuit Judge.    A jury convicted Josette Buendia, an elementary-school principal, of federal-programs bribery.  She ordered school supplies with federally subsidized funds from contractor Norman Shy, who shorted the school and made up for the shortages with gift cards and cash given to Buendia.  At trial the district court excluded as irrelevant evidence that supposedly showed how Buendia spent that kickback money for school-related purposes and excluded as hearsay receipts purportedly showing expenses paid by Buendia on behalf of the school.  Buendia now challenges those evidentiary rulings, and also makes arguments regarding the government's conduct at trial and whether the evidence presented conformed to the allegations in the indictment.  None of these arguments warrants reversal.  This is in large part for the reason that, even if a defendant spent ill-gotten funds for commendable purposes, that is simply not a defense to this kind of bribery offense.

As principal of Bennett Elementary School, Josette Buendia took kickbacks from Norman Shy and had Detroit Public Schools (DPS) pay Shy for supplies he never delivered.  Some of the money DPS paid Shy came from the federal government.

In 2014, while investigating corruption in Detroit schools, the FBI searched the home of the supplier, Shy, and found twenty manila folders related to bribery schemes.  One folder had a ledger of kickbacks Shy owed Buendia and requests from Buendia for gift cards.  The government charged Buendia with one count of conspiracy to commit federal-programs bribery in violation of 18 U.S.C. § 371, and with two counts of federal-programs bribery in violation of 18 U.S.C. § 666(a)(1)(B).

The case went to trial.  The government called three witnesses relevant to this appeal: Jonathan Salz, who testified that Buendia bought massages using gift cards from Shy; IRS Agent John Stromberg, who testified about the manila envelopes; and FBI Agent Doug Wood, who also testified about the envelopes.

Buendia claimed she was innocent because she spent some of the kickbacks to improve the school. Through Shirley Austin—a school secretary—Buendia sought to enter alleged receipts of school expenditures as records of regularly conducted activity. The government objected to the receipts as hearsay. The district court sustained the objection. Also, through John Mohn—a building engineer—Buendia sought to enter a picture of the school's leaky roof that apparently had been fixed during her tenure. The government objected to the picture's relevance. Buendia argued that evidence of how she spent kickbacks was relevant to whether she had corruptly solicited them, an element of the bribery charge. The district court sustained the objection. Buendia argued that the ruling cut off her defense, so she proffered the testimony of five witnesses, then rested her case.

The jury convicted Buendia on all counts. The government then dismissed the conspiracy count. The district court sentenced her to 24 months' imprisonment.

Buendia argues on appeal that the district court violated her constitutional right to present a complete defense when it excluded both evidence of her kickback expenditures and the alleged receipts of expenditures for school purposes. She also argues that the government opened the door to evidence of her kickback expenditures and sandbagged her with a late objection to that evidence. Buendia further argues that testimony about the manila envelopes constructively amended the indictment. Finally, Buendia argues that the district court committed cumulative error. Ultimately none of these arguments is persuasive.

Buendia has not shown a violation of her right to present a complete defense, because that right yields to reasonable evidentiary restrictions. *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc). It is well settled that a defendant "does not have an unfettered right to offer testimony that is . . . inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). As explained *infra*, the district court correctly excluded as irrelevant evidence of how Buendia spent the kickback money, and the court also correctly excluded the receipts of school expenditures as hearsay. Those rulings were based on exactly the kind of "standard rules of evidence" to which the Supreme Court referred in *Taylor*. Thus, the constitutional dimension of Buendia's evidentiary arguments is no ground for reversal.

Buendia's first evidentiary challenge—to the exclusion of her kickback expenditures—fails because none of the excluded evidence was relevant. The jury convicted Buendia of federal-programs bribery, which requires her to have "corruptly solicit[ed]" the kickbacks. 18 U.S.C. § 666(a)(1)(B). She argues that she lacked the requisite corruptness because, as this evidence allegedly would have shown, she spent the kickbacks to benefit the school. But regardless of how Buendia might have eventually spent the kickback money, she "corruptly solicit[ed]" it because, by awarding contracts to Shy in exchange for kickbacks, she subverted the normal bidding process in a manner inconsistent with her duty to obtain goods and services for her school at the best value. As Justice Scalia, writing separately, recounted in *United States v. Aguilar*, 515 U.S. 593 (1995), "[T]he term 'corruptly' in criminal laws has a longstanding and well-accepted meaning. It denotes '[a]n act done with an intent to give some advantage inconsistent with official duty and the rights of others.'" *Id.* at 616 (Scalia, J., concurring in part and dissenting in part) (*quoting United States v. Ogle*, 613 F.2d 233, 238 (10th Cir. 1979)). The kickback-expenditure evidence would therefore have made no fact of consequence more or less probable, so the district court correctly excluded the evidence as irrelevant. *See* Fed. R. Evid. 401, 402.

The receipts for purported school expenses were also properly excluded. For one, the receipts were irrelevant for the reason just discussed. In addition, the district court's ruling that Shirley Austin could not lay the foundation necessary to enter them under Federal Rule of Evidence 803(6)'s records-of-a-regularly-conducted-activity exception to hearsay was correct. Such a foundation must be laid through "the testimony of the custodian or other qualified witness," *United States v. Jenkins*, 345 F.3d 928, 935 (6th Cir. 2003) (quoting Fed. R. Evid. 803(6)), the latter of which is a person "familiar with the record-keeping procedures of the organization," *United States v. Baker*, 458 F.3d 513, 518 (6th Cir. 2006) (quoting *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 576 (6th Cir. 1999)). Austin was neither. She did not regularly maintain a record of the receipts, but rather put the receipts into a binder in preparation for Buendia's trial. She merely assumed that the receipts in the binder came from the envelope in Buendia's office. Further, she did not testify that she knew who submitted each receipt, whether Buendia reimbursed that person, and—if so—where the money came from. For these

reasons, Austin was not qualified to lay the foundation necessary to enter the receipts. The district court therefore correctly excluded the receipts as hearsay.

Nor did the government open the door for Buendia to introduce evidence of her kickback expenditures. Although a court has discretion to let a party introduce inadmissible evidence when another party has introduced inadmissible evidence, *see United States v. Segines*, 17 F.3d 847, 856 (6th Cir. 1994), here the government's evidence was admissible. Salz's testimony that Buendia bought massages using a gift card from Shy connected her to a specific kickback, which showed that she accepted kickbacks. Because the evidence was admissible, it did not open the door for Buendia to introduce inadmissible evidence.

Buendia has not shown that the government engaged in sandbagging by means of a late objection to the relevance of her kickback expenditures. We do not favor sandbagging, but none appears to have occurred here. Instead, the government objected early and often—at the beginning of Buendia's case-in-chief, during Glenn Pingilley's testimony, during Jeanine Gant's testimony, during Shirley Austin's testimony, during Evelyn Adams's testimony, and during John Mohn's testimony. Thus, the government did not sandbag Buendia.

There was no constructive amendment to the indictment. Buendia argues that the district court erred by permitting two federal agents to testify about the twenty manila envelopes they had found in Shy's home, one of which corresponded to Shy's dealings with Buendia. This evidence, so her argument goes, created the inference that she participated in more than one conspiracy and thus forced her to defend a conspiracy other than the one charged by the indictment. But a constructive amendment requires that both the evidence *and* the jury instructions undermine the indictment. *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006). Here, the jury instructions mirrored the indictment's allegation that Buendia conspired only with Shy. Thus, even if the proof at trial went beyond the single accusation in the indictment, no constructive amendment occurred.

Finally, Buendia's cumulative-error argument cannot succeed because she has shown no error. We have held that "cumulative-error analysis is not relevant where no individual ruling was erroneous." *United States v. Deitz*, 577 F.3d 672, 697 (6th Cir. 2009).

The judgment of the district court is affirmed.