Steven **WILLIAMS**, Petitioner,

v.

Pamela **WITHROW**, Respondent.

No. 00–10502–BC.

United States District Court,
E.D. Michigan,
Northern Division.

July 26, 2004.

Sheldon Halpern, Royal Oak, MI, for Petitioner.

Brenda E. Turner, Michigan Department of Attorney General, Lansing, MI, for Respondent.

### OPINION AND ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, OVERRULING PETITIONER'S OBJECTIONS, AND DENYING HABEAS CORPUS PETITION

LAWSON, District Judge.

Steven Williams is a prisoner in the custody of the Michigan Department of Corrections presently incarcerated at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan. He has filed a petition for the writ of habeas corpus through counsel alleging that he is in custody in violation of the Constitution because his Michigan convictions of first-degree murder, assault with intent to murder, and possession of a firearm in the commission of a felony (felony firearm) were obtained at a 1997 trial that was fundamentally unfair. The Court referred the matter to Magistrate Judge Charles E. Binder pursuant to 28 U.S.C. § 636 and E.D. Mich. LR 72.1, who found otherwise. Magistrate Judge Binder filed a report and recommendation recommending that the petition be denied, to which Williams' counsel timely objected.

The Court has conducted a *de novo* review of the record in light of Williams' petition, the response, the magistrate judge's report and the objections. The Court finds that the magistrate judge's suggestion that the petitioner did not exhaust his state remedies on his first claim—that he was denied the opportunity to fairly present his mistaken identity defense because the state trial judge erroneously excluded evidence, including expert testimony, that would challenge the eyewitness identification—is not well taken. That claim was exhausted, but it does not warrant habeas relief on the merits. The Court agrees with the magistrate judge's disposition of the second claim and holds that no constitutional error resulted from the failure to instruct the jury on a lesser offense of voluntary manslaughter. Likewise, the Court concurs with the recommendation that the third claim, which is an amalgamation of unobjected to errors relating to jury instructions, was procedurally defaulted by the lack of a contemporaneous objection in the state trial court, and no cause or prejudice excuses the default. The Court therefore will adopt the report and recommendation in part and deny the petition for writ of habeas corpus.

I.

The convictions arose from the shooting death of Landis Davis and the assault of his companions outside the Blue Note Lounge in Detroit on November 19, 1995. Davis had been a patron of the lounge earlier that night when he, his cousins Alvin Woodford and Anjorel Hammond, and Hammond's girlfriend, Angela Hill, went there to celebrate Hill's birthday. At approximately 1:45 a.m., Woodford attempted to return to his seat at the bar

when the petitioner refused to let him pass, and an argument ensued. A group of about seven or eight people were at the bar with the petitioner, including a man named Trenell Whitworth. Davis approached Whitworth, with whom he was acquainted, and attempted to calm things down. Davis said to Whitworth, "you get your friends and you all go, and I get my friends, and we just go on about our business; you know, everybody go on back their own separate ways." Trial Tr. Vol. I at 103. About this time, however, the petitioner threw a drink at Davis that hit him on his forehead and a fight broke out between the two groups. The bouncers at the bar broke up the fight and compelled the petitioner, Whitworth, and the rest of their group to leave the bar. At one point, a bouncer also fired a shot in the bar to further calm down the situation.

Hill left the bar sometime during the fight and brought a car around to the door of the bar. As Hammond, Davis, and Woodford exited the bar and were in the process of getting into the car, two men, identified at trial as the petitioner and Whitworth, ran across the street toward the group, pulled out guns, and began shooting. Hill testified at trial that the petitioner shot at the car four or five times and that Davis was hit with a bullet and then "just slid down the car." Trial Tr. Vol. II at 44. Everyone in the area started running, and Hammond testified at trial that as he ran to the side of the bar he heard Hill say that Davis had been shot in the head. Hammond then went back to the car and saw the petitioner standing over Davis, who was lying on the ground. Hammond testified that the petitioner was shooting his gun up into the air and when the gun ran out of bullets, the petitioner reloaded and began chasing after Hammond. The petitioner got into a burgundy Impala, which was parked behind the bar, and continued to chase after Hammond

and shoot at him. Eventually, police arrived at the scene, and the petitioner fled.

In the days following the shooting, Hammond asked a friend who wasn't at the Blue Note on the night of the shooting if he knew the name of Whitworth's best friend. The friend gave Hammond the name of the petitioner. On November 28, 1995, Hammond attended a live lineup and positively identified Whitworth as one of the individuals who was shooting at his group on the night in question. On November 29, 1995, Hammond attended another live lineup. On this day, however, Hammond was unable to identify a different target suspect. Upon viewing the lineup, Hammond stated that the suspects standing in the third, fourth, and fifth positions all looked as though they could be one of the individuals that was involved in the shooting. The police were attempting to see if Hammond could identify an individual named Wendell Hightower, who the police suspected might have been a third person involved in the shooting with the petitioner and Whitworth. On December 7, 1995, Hammond was shown an array of photographs and asked if he could identify the shooter. Hammond picked out the petitioner from the photo array.

Prior to trial, the petitioner filed a motion to permit expert testimony by Dr. Stephen Miller on the eyewitness identification of criminal suspects. The trial court entertained oral argument at which the petitioner's attorney expounded that Dr. Miller would be called to

> explain some of the psychological make-up that goes into an eyewitness identification, why there are so many inappropriate identifications being made, why individuals who are under stress who make identifications are frequently wrong, the manner in which photographs are displayed to individuals may

be suggestive and how that fits into false identifications and misidentification. *Arraignment Tr.* at 7–8. The prosecutor stated at the hearing that he would not contest the motion, but at the conclusion of the hearing, the trial court stated:

And there is no expert, no matter who he is, that can come in and make an opinion based on generalizations about the value of a person's identification. The jury hears the witness. They hear the two witnesses. If these two people give different identifications, it could be subjective. It could be because people see things differently. It might be because they're not talking about the same person. I could be anything. But the fact is that the jury heard that. They are the experts. They then make that decision. They don't have to have anyone coming in here and telling them, well, this is unreliable because, for this reason. The jury is going to hear one case.

*Id.* at 10–11. Accordingly, the trial court denied the petitioner's motion.

The petitioner's jury trial commenced on April 7, 1997 in the Wayne County, Michigan Circuit Court in Detroit. At trial, the prosecution called several witnesses who were at the scene of the crime and provided eyewitness testimony regarding the events that took place. Hammond was called as a witness and he testified that he saw the petitioner shoot Davis and also saw Whitworth shooting that night. Regarding his identification of the petitioner, Hammond testified as follows:

Q. Are you positive that Mr. Williams was one of the shooters that was out there that night?

A. Yes.

Q. How positive are you?

A. I'm positive—there's some things that you just never forget—

Q. Okay.

A. —and I'm positive. We looked at each other. We was—right looking each other right smack in the face from the argument, from the fight, from the time he threw the drink. And just everything was just happening so—you know, I wasn't paying—you know, when he was running by, you know, I wasn't paying no attention to him. Then he just pulled out the gun and just started shooting. I'll never forget him.

*Trial Tr.* Vol. I at 126–127. Hammond also testified that he had never seen the petitioner before the night of the incident.

The prosecution also called Angela Hill, Hammond's girlfriend, to testify. She testified that she saw both the petitioner and Whitworth shooting and that there was no doubt in her mind that the petitioner shot Davis. She also testified that Whitworth shot Davis while he was lying on the ground. Hill positively identified the petitioner in a photo array at a police station and later identified Whitworth in a live lineup.

The remaining eyewitnesses for the prosecution did not provide as conclusive an identification as did Hammond and Hill, but nevertheless did provide an account of the events that occurred that night. Woodford testified that the petitioner threw a drink at him and that while Davis was attempting to break up the confrontation, the petitioner threw a drink at Davis. Woodford also testified that he hit the petitioner in the face for throwing the drink. He further testified that the petitioner ran up towards him, Davis, Hammond, and Hill, who were all getting in the car, and pulled out a gun and started shooting. Woodford testified that he did not actually see the fatal shot because he ducked down behind a car and then ran off. On cross-examination, Woodford stated that he did not remember making a

statement to the police that he did not see the petitioner in the bar prior to the shooting. *See* Trial Tr. Vol. II at 140. Juan Morris, who was working as a parking lot attendant at the Blue Note Lounge on the night in question, and Maurice Traylor, who was a bar patron, also testified. Morris said that he saw two men run across the street and shoot Davis. He stated that the petitioner was one of the men he saw with a gun after the shooting occurred. Traylor also testified that he saw the shooting and identified the petitioner as one of the people he saw fighting in the bar and as one of the two shooters he saw running across the street with a gun toward Davis. Traylor further testified that he saw the petitioner shoot Davis after he was on the ground. Trial Tr. Vol. III at 76.

The defense called Seymour Posner as a witness. He is a licensed attorney who was at the Hightower lineup to observe the proceedings. Posner testified that Hammond failed to make a positive identification. The petitioner also attempted to introduce evidence of the Hightower lineup in the form of the lineup sheet and a photograph of the lineup in an effort to discredit Hammond's identification abilities. The trial court, however, excluded the evidence. The trial court stated:

> The only thing admissible in this case is what the witness said, and the only thing the witness said and that is already on the record is so and so looks like him. Him not being the defendant, him not being the No. 2 man, him being another person as far as I know that has never been charged in this case and it is totally irrelevant. Has nothing to do with this case. The Court will deny the admissibility of that exhibit because Mr. Posner's testimony is pure hearsay, it has nothing to do with the case whatsoever. They heard his testimony on the risk of committing error which I usually like to do in favor of the defense. It has noth-

ing whatsoever to do with this matter. That a person went to a line-up and failed to identify a third person who is not even charged, it has nothing to do with anything. They heard the testimony, it's in, the jury heard that but that line-up sheet is not relevant.

Trial Tr. Vol. III at 67–68.

After the four-day trial, the jury convicted the petitioner of the first-degree premeditated murder of Landis Davis, Mich. Comp. Laws § 750.316(1)(a), assault with intent to murder with regard to Hammond, Mich. Comp. Laws § 750.83, and felony firearm, Mich. Comp. Laws § 750.227(b). The petitioner was subsequently sentenced to concurrent terms of life in prison without parole for the murder and assault, and a two-year consecutive term on the felony firearm conviction.

The petitioner filed an appeal in the Michigan Court of Appeals which affirmed his conviction. *See People v. Williams,* No. 204918, 1999 WL 33447045 (Mich.App. April 13, 1999) (per curiam) (unpublished). The petitioner sought leave to appeal but the Michigan Supreme Court denied his application in December 1999 stating that it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Williams,* 461 Mich. 939, 606 N.W.2d 28 (1999) (unpublished order).

On December 28, 2000, the petitioner filed through counsel the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition alleges three grounds for relief:

I. PETITIONER WILLIAMS' DEFENSE WAS MISIDENTIFICATION. THE STATE COURT JUDGE DID NOT ALLOW PROFFERED TESTIMONY FROM A DEFENSE EXPERT CONCERNING THE INHERENT RISK OF EYEWITNESS IDENTIFICA-

TION. THE TRIAL JUDGE ALSO PROHIBITED IMPEACHMENT OF A PROSECUTION WITNESS' IDENTIFICATION TESTIMONY. AS A RESULT, PETITIONER WILLIAMS WAS PRECLUDED FROM PRESENTING HIS DEFENSE TO THE JURY AND WAS THEREBY DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL.

II. FOLLOWING A BAR ROOM BRAWL WHICH INCLUDED A GUNSHOT, FISTFIGHTS, THROWN BOTTLES AND GLASSES, THE DECEDENT WAS SHOT OUTSIDE THE BAR. THE TRIAL JUDGE'S REFUSAL TO GIVE A TIMELY REQUESTED JURY INSTRUCTION ON VOLUNTARY MANSLAUGHTER PREVENTED THE JURY FROM CONSIDERING MANSLAUGHTER AS AN ALTERNATE DEFENSE. PETITIONER WILLIAMS' FIFTH AND FOURTEENTH AMENDMENTS RIGHTS TO A FAIR TRIAL WERE THEREBY VIOLATED.

III. THE TOTALITY OF THE STATE TRIAL JUDGE'S INCOMPLETE AND INCORRECT JURY INSTRUCTIONS, INCLUDING, BUT NOT LIMITED TO: THE ELEMENTS OF FIRST AND SECOND DEGREE MURDER; SPECIFIC INTENT; REASONABLE DOUBT; AND AIDING AND ABETTING, DENIED PETITIONER WILLIAMS HIS FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS AND FAIR TRIAL RIGHTS.

The respondent filed an answer alleging procedural default and lack of merit.

## II.

The parties do not dispute the applicable standard of review for cases under 28 U.S.C. § 2254, but the Court will reiterate it here. The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), govern this case because the petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). That Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith,* 539 U.S. 510, ——, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003).

■ As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will

not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at ——, 123 S.Ct. at 2535 (quoting *Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous.").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable....
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410–11, 120 S.Ct. 1495. *See also McAdoo v. Elo*, 365 F.3d 487, 493–93 (6th Cir.2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir.2003) (en banc) *cert. denied*, —— U.S. ——, 124 S.Ct. 1601, 158 L.Ed.2d 247 (2004); *Lewis v. Wilkinson*, 307 F.3d 413, 418 (6th Cir.2002).

## A.

■ The petitioner first claims that his state trial was unfair because the trial judge did not allow him fully to present his defense when the judge barred the testimony of an eyewitness identification expert and refused admission of a photograph of a lineup and the lineup sheet.

### 1.

The magistrate judge suggested that the petitioner did not exhaust his federal claim in the Michigan courts because his arguments on appeal contained only citations to Michigan law and asserted only that the trial judge abused his discretion under Michigan law. The petitioner points out in response that his brief on appeal relied on *People v. Anderson*, 389 Mich. 155, 205 N.W.2d 461 (1973), and the citation to *Anderson* satisfies the exhaustion require-

ment because the *Anderson* case relied upon United States Supreme Court precedent. The magistrate judge found that *Anderson* discussed the rules set forth by the Supreme Court in *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), which held that criminal defendants have a constitutional right to be represented by counsel when participating in a lineup, but the petitioner's citation to *Anderson* was not sufficient to exhaust the present federal claim because *Anderson* could not be consider a decision employing constitutional analysis in a similar fact pattern as neither *Anderson* nor *Wade* discussed whether a criminal defendant has a federal constitutional right to present an expert witness at trial on the issue of the inherent unreliability of eyewitness identifications. *See* R & R at 13.

■ The Court disagrees with the suggestion that the first claim was not exhausted because the Court cannot accept the magistrate judge's characterization of the petitioner's appellate argument in state court. The doctrine of exhaustion of state remedies requires state prisoners to fairly present their claims to the state courts before raising those claims in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A) & (c); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir.2000), *cert. denied,* 532 U.S. 958, 121 S.Ct. 1487, 149 L.Ed.2d 374 (2001). The Supreme Court recently explained that,

> [b]efore seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (*per curiam*) (quoting *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct.

509, 30 L.Ed.2d 438 (1971) (citation omitted)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. *Duncan, supra,* at 365–366, 115 S.Ct. 887; *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

*Baldwin v. Reese,* —— U.S. ——, ——, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004). In Michigan, this means that petitioners must raise their claims before both the Michigan Court of Appeals and the Michigan Supreme Court before raising them on habeas review. *Mohn v. Bock,* 208 F.Supp.2d 796, 800 (E.D.Mich.2002).

■ A claim is "fairly presented" to the state courts if it "(1) relie[s] upon federal cases employing constitutional analysis; (2) relie[s] upon state cases employing federal constitutional analysis; (3) phras[es] the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) allege[s] facts well within the mainstream of constitutional law." *McMeans,* 228 F.3d at 681.

The petitioner's brief to the Michigan Court of Appeals states as a heading, "Did the trial court commit reversible error when it denied defense counsel's motion to permit expert testimony on the issue of identification, thereby denying the defendant the right to due process pursuant to U.S. Const. Ams V, XIV; and Mich. Const 1963 Art. 1, Sec. 17?" *See* Rule 5 Materials, Pet.'s Br. on Appeal. Nearly the identical issue was raised on appeal to the Michigan Supreme Court. Although the petitioner only cited to state court authority in his appellate brief to support his argument, the petitioner cited to sever-

al opinions from the Sixth Circuit applying a constitutional analysis in support of his claim to the Michigan Supreme Court. Furthermore, the heading of his argument and the body of the argument specifically refers to the Constitution. The petitioner phrased his claim in constitutional terms or in terms sufficiently particular to bring to mind a specific constitutional right. He also alleged facts well within the mainstream of constitutional law—his due process rights were violated because the state trial judge prohibited him from presenting a defense or from receiving a fair trial. The Court, therefore, rejects that portion of the magistrate judge's report concluding that the petitioner failed to exhaust state remedies as to his first claim.

### 2.

The magistrate judge nonetheless reached the merits of the petitioner's first claim. He suggested that state evidence rulings do not rise to the level of a constitutional violation unless they render the trial fundamentally unfair. He also found that the plaintiff failed to cite controlling Supreme Court authority on the expert witness issue, but only relied on two court of appeals cases that interpret the Federal Rules of Evidence—*United States v. Smith*, 736 F.2d 1103 (6th Cir.1984), and *United States v. Smithers*, 212 F.3d 306 (6th Cir.2000). He reasoned that since the AEDPA requires a habeas petitioner to show that the state court contravened or unreasonably applied federal law as determined by the Supreme Court, reliance on court of appeals authority is not sufficient.

The petitioner states in his objections that the magistrate judge misunderstood his first argument. It is not so much the state court's evidentiary ruling the petitioner assails, but rather the resulting consequence of the denial of a fair opportunity to present a defense. As to Supreme Court authority on the question of expert witnesses, the petitioner refers to *Daubert*

*v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

■ The petitioner's citation to *Daubert* and *Kumho Tire* is unavailing, since both of those cases interpret the requirements of Federal Rule of Evidence 702, which did not govern the trial in this case. Nor do those cases establish any federal constitutional precedent. However, the petitioner's right to present a defense is a clearly established constitutional right. *See Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)) (holding that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense' "). The question, then, is whether that right was abridged in this case by the state trial judge's evidentiary rulings.

The Sixth Circuit recently has summarized the pertinent Supreme Court law as follows:

A fair opportunity to present a defense is a constitutional right. *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (citing cases). Presenting relevant evidence is integral to that right. *Taylor v. Illinois*, 484 U.S. 400, 408–09, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (stating that "[t]he need to develop all relevant facts in the adversary system is both fundamental and comprehensive"). In particular, few rights are more fundamental than that of an accused to present witnesses in his own defense. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (citations omitted). However, this right is not absolute. The defendant "must comply with established rules of procedure and evidence

designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Ibid.* States have broad authority to promulgate rules that exclude evidence so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (citing *Rock v. Arkansas*, 483 U.S. 44, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (internal citations omitted)). Accordingly, the Constitution leaves judges "wide latitude" to exclude evidence that is only "marginally relevant." *Crane*, 476 U.S. at 689, 106 S.Ct. 2142.

Exclusion of evidence only raises constitutional concerns if it has "infringed upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308, 118 S.Ct. 1261 (citations omitted). Only if "an evidentiary ruling is so egregious that it results in a denial of fundamental fairness [does] it ... violate due process and thus warrant habeas relief." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), *cert. denied sub nom. Bugh v. Bradshaw*, — U.S. ——, 124 S.Ct. 345, 157 L.Ed.2d 236 (2003) (stating that "[g]enerally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' ") (internal citations omitted); *Estelle*, 502 U.S. at 67, 112 S.Ct. 475 (rejecting the Ninth Circuit's reliance on its own determination that evidence had been improperly admitted to justify habeas relief because "[s]uch an inquiry ... is no part of a federal court's habeas review of a state conviction").

*Baze v. Parker*, 371 F.3d 310, 323–24 (6th Cir.2004); *see also Rockwell v. Yukins*, 341 F.3d 507, 512–13 (6th Cir.2003) (en banc).

The Court cannot say that the exclusion of the petitioner's proffered expert testimony was arbitrary or disproportionate to the purpose of the state evidence rule intended to ensure that expert testimony is helpful, relevant, and presented through a qualified witness. The authority cited by the court of appeals majority in *United States v. Smithers*, 212 F.3d at 311–12 & n. 1, demonstrates that the question of the admissibility of expert testimony on the issue of eyewitness identification is far from settled. The dissent brings that point home by referring to dozens of cases that serve only to document the uneven treatment of such testimony and the checkered reception that experts in that field have received in court. *See id.* at 318–19. The Court believes that such testimony can be helpful, relevant and admissible in the proper context, and perhaps the state trial judge made a mistake by excluding it in this case. However, the Court's view is not the controlling one, nor does it amount to a finding of unreasonableness or the failure to follow Supreme Court precedent.

The Michigan Court of Appeals stated that

> [b]efore permitting expert testimony, a trial court must find that the evidence is from a recognized discipline, relevant and helpful to the trier of fact, and presented by a qualified witness. [*People v.*] *Daoust*, [228 Mich.App. 1], 9–10, 577 N.W.2d 179. In the present case, the trial court's determined that expert testimony on identifications would not assist the jury. The trial court was of the opinion that the jury was quite capable of determining the credibility of the identification testimony without the aid of an expert. The trial court did not abuse its discretion in reaching this conclusion.

*Williams*, No. 204918, 1999 WL 33447045, *5. Concerning the lineup evidence, the appellate court stated that

MRE [Mich. R. Evid.] 103(a) requires that error cannot be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. Here, defendant cannot show that a substantial right of his was affected. Although the trial court did not admit the lineup sheet or photograph evidence, the substance of the lineup sheet and photograph were admitted into evidence through the testimony of a witness at trial.

*Ibid.* Thus, the state court of appeals in this case concluded that the trial court did not abuse its discretion in refusing to permit the jury to hear testimony by the proffered expert or in refusing to admit the lineup evidence.

The court of appeals' decision was not contrary to or an unreasonable application of federal law; the trial court's decision to preclude the evidence and expert witness testimony did not render the trial fundamentally unfair. As the magistrate judge observed, all of the eyewitnesses were subjected to thorough and intense cross-examination by the petitioner's able trial counsel. Inconsistencies were brought to the attention of the jury and the petitioner was permitted to argue the infirmities that can infect eyewitness identification when crime victims are vulnerable and under great stress. The jury was provided with the information that allowed them reasonably to assess the credibility of the eyewitnesses, and the petitioner's defense of misidentification was fully aired before the jury.

■ "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir.1994). The Sixth Circuit has explained that

"[e]rrors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff*, 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)); *see also Spencer v. Texas*, 385 U.S. 554, 563–64, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

*Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir.2000), *cert. denied*, 532 U.S. 989, 121 S.Ct. 1643, 149 L.Ed.2d 502 (2001) (second alteration in original). Thus, even if some rule of evidence was violated, relief on collateral review will be provided "only when a trial error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Ford v. Curtis*, 277 F.3d 806, 809 (6th Cir.2002) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)).

Because the state court's evidentiary rulings did not deprive petitioner Williams of his right to present his mistaken identity defense, and the omission thus did not have a substantial or injurious effect on the jury's verdict, the Court will not grant habeas relief on this claim.

**B.**

■ In claim II, the petitioner argues that his due process right to a properly instructed jury and his right to present an alternate defense of voluntary manslaughter were violated when the trial judge refused to give a manslaughter instruction. Under Michigan law, voluntary manslaughter is a cognate lesser included offense of murder. *People v. Cheeks*, 216

Mich.App. 470, 479, 549 N.W.2d 584, 588 (1996). At the time of the petitioner's trial, Michigan courts were not obliged to give lesser offense instructions on cognate offenses unless the trial judge determined the evidence warranted it.

> The trial court is required to give an instruction for a cognate lesser included offense if: (1) the principal offense and the lesser offense are of the same class or category, and (2) the evidence adduced at trial would support a conviction of the lesser offense. There must be more than a modicum of evidence; there must be sufficient evidence that the defendant could be convicted of the lesser offense.

*Id* at 479–80, 549 N.W.2d at 588; *but see People v. Cornell*, 466 Mich. 335, 353–354, 357, 646 N.W.2d 127 (2002) (changing the rule to provide that only necessarily included lesser offenses may be considered by the jury as "inferior" offenses and that instructions on such offenses are appropriate only "if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence" would support the instructions). Thus, as a matter of state law, the trial court was not required to give a voluntary manslaughter instruction absent sufficient evidence to support such a conviction. As noted by the Michigan Court of Appeals, the evidence did not reasonably support a voluntary manslaughter instruction.

> Our review of the lower court proceedings reveals that there was not sufficient evidence to support an instruction on voluntary manslaughter, because there was no evidence presented to show that defendant was adequately provoked. Adequate provocation is an element of the crime of voluntary manslaughter. Here, defendant claims that the fight in the Blue Note Lounge, coupled with the shot fired, was enough to satisfy the element of adequate provocation. We

disagree. Although objects were thrown during the fight, the evidence established that the only person who threw anything was defendant. Furthermore, although a shot was fired inside the bar, the shot was fired by someone unconnected with this incident, not by the victim. The trial court correctly refused to instruct the jury on voluntary manslaughter.

*Williams,* No. 204918, 1999 WL 33447045, *2 (citations omitted).

■ Generally, federal habeas corpus relief is not available for errors of state law, such as claims for failure to instruct on a lesser included offense. *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir.) (en banc), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2626, 110 L.Ed.2d 646 (1990). Moreover, even assuming that the trial court erred as a matter of state law, the petitioner is not entitled to relief from this Court unless the error rendered the trial fundamentally unfair. In *Bagby,* the court held that a state court's failure to instruct the jury on a lesser included offense in a noncapital criminal case is not such a "fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Bagby,* 894 F.2d at 797.

■ The Michigan Court of Appeals did not make an unreasonable determination of the facts; rather it applied the facts to the elements of Michigan's crime of voluntary manslaughter and found that the instruction was not warranted. A presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Hardaway v. Withrow,* 305 F.3d 558, 563 (6th Cir.2002); *see also Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001). To establish voluntary manslaugh-

ter the evidence must establish (1) that the defendant killed in the heat of passion; (2) that the passion was caused by an adequate provocation; and (3) that there was not a lapse of time during which a reasonable person could control his passions. *People v. Pouncey,* 437 Mich. 382, 388, 471 N.W.2d 346, 350 (1991). The evidence established that the petitioner threw a drink at Davis; however, there was no evidence introduced that Davis provoked the petitioner or took any action after the drink was thrown that could have incited the petitioner to retaliate by killing Davis. Therefore, the record does not indicate that the state courts unreasonably determined the facts with regard to the petitioner's claim.

■ As the magistrate judge held, there is no constitutional right to a jury instruction if the requested charge does not satisfy the legal definition of a lesser-included offense, *see Hopkins v. Reeves,* 524 U.S. 88, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998), and, by definition, cognate offenses such as voluntary manslaughter do not meet the definition of lesser-included offenses because they are "related and hence 'cognate' in the sense that they share several elements, and are of the same class or category, but may contain some elements not found in the higher offense." *United States v. Colon,* 268 F.3d 367, 373 (6th Cir.2001). Accordingly, the petitioner does not have a federal constitutional right to a voluntary manslaughter instruction because the petitioner has not suggested how the state courts' treatment of this is issue is contrary to or an unreasonable application of federal law. Therefore, the petitioner is not entitled to habeas relief on this claim.

### C.

In claim III, the petitioner alleges that the trial judge improperly instructed the jury because the judge did not use the Michigan Standard Criminal Jury Instruc-

tions. As summarized by the magistrate judge, the petitioner claims that (1) the trial court's instructions on the burden of proof, the presumption of innocence, and the reasonable doubt standard improperly shifted the burden of proof; (2) the court told the jury that first-degree murder was a specific intent crime, but then failed to define specific intent; (3) the court's instruction on aiding and abetting did not articulate the level of intent necessary; (4) the first-degree murder instruction confused the meaning of premeditation and deliberation; and (5) the second-degree murder instruction omitted the element of malice.

■ The magistrate judge found that the petitioner's claims for improper instructions on the first and second degree murder instructions and on the reasonable doubt standard were procedurally defaulted. The Court agrees. Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Couch v. Jabe,* 951 F.2d 94 (6th Cir.1991) procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman,* 501 U.S. at 752, 111 S.Ct. 2546, if he fails to present an issue to a state appellate

court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady,* 456 U.S. 152, 167–69, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Simpson v. Sparkman,* 94 F.3d 199, 202 (6th Cir.1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust,* 17 F.3d at 162; *see Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle,* 260 F.3d 684, 693 (6th Cir.2001), *cert. denied,* 536 U.S. 947, 122 S.Ct. 2635, 153 L.Ed.2d 816 (2002); *see also Warner v. United States,* 975 F.2d 1207, 1213–14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[ ] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson,* 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna,* 534 U.S. 362, 375, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002).

If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust,* 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

In this case, the Michigan Court of Appeals found that some of the plaintiff's claims regarding improper jury instructions were either barred or waived pursuant to two state procedural rules. The first rule requires a criminal defendant to object to improper jury instructions in order to preserve such a claim for appellate review. *See People v. Ullah,* 216 Mich.App. 669, 676–77, 679, 550 N.W.2d 568, 573–74 (1996) (citing *People v. Van Dorsten,* 441 Mich. 540, 544–45, 494 N.W.2d 737 (1993) and *People v. Stanaway,* 446 Mich. 643, 687, 521 N.W.2d 557 (1994)). The Court notes further that the contemporaneous-objection rule was firmly established and regularly followed by Michigan appellate courts with respect to claims of improper jury instructions before the petitioner's 1997 trial. *See Ullah,* 216 Mich.App. at 676–77, 679, 550 N.W.2d at 573–74; *Stanaway,* 446 Mich. at 687, 521 N.W.2d at 557. The petitioner's trial counsel failed to object to the jury instructions explaining the deliberation aspect of first-degree murder, and to the second-

degree murder instruction. The court of appeals stated

[d]efendant ... argues that the trial court erred because it did not properly instruct the jury on the term deliberation and that it also did not properly explain the malice element of second-degree murder. We disagree. Defendant has failed to properly preserve these claims of error for appellate review because no objection was raised before the trial court and review is foreclosed absent manifest injustice. There is no manifest injustice here. The trial court's instructions on deliberation and the malice element of second-degree murder fairly presented the issues to the jury and sufficiently protected defendant's rights.

*Williams,* No. 204918, 1999 WL 33447045, *3.

The state court's reliance on the petitioner's failure to object to the trial court's instructions is an adequate and independent state ground foreclosing review. *Luberda v. Trippett,* 211 F.3d 1004, 1006–07 (6th Cir.2000); *Rogers v. Howes,* 144 F.3d 990, 994 (6th Cir.1998); *see Engle v. Isaac,* 456 U.S. 107, 110, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) (concluding that a petitioner who fails to comply with a state rule mandating contemporaneous objections to jury instructions may not challenge the constitutionality of those instructions in a federal habeas corpus proceeding). The last state court to consider the petitioner's claim on these instructions was the Michigan Court of Appeals, and it enforced the procedural rule; therefore, in order to obtain habeas review on his claims for improper instructions on first-degree and second-degree murder, the petitioner must show cause and prejudice or a miscarriage of justice. *See Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

The second rule the appellate court found either barred or waived a claim of the petitioner involved the instruction on reasonable doubt. The appellate court found the claim for improper instruction on reasonable doubt waived because no argument or authority was presented in the petitioner's appellate brief to support the claim that the instruction was improper. The appellate court stated:

Defendant's argument regarding this instruction [reasonable doubt] has not been properly preserved for appellate review. Although defendant did object to this instruction, he fails to cite any authority to support his position on appeal, and therefore, the issue is waived. Furthermore, defendant fails to argue the merits of this claim of error on appeal. In any case, we find no error.

*Williams,* No. 204918, 1999 WL 33447045, *3. Therefore, the petition must also show cause and prejudice or a miscarriage of justice to prevail on this claim. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *see also Gravley v. Mills,* 87 F.3d 779, 784–85 (6th Cir.1996).

The magistrate judge concluded that "cause" did not exist because, although the petitioner alleged that the failure to object to the instructions was a result of his counsel being ineffective, there was no indication in the record that the petitioner ever raised the issue of ineffective assistance of counsel before the state courts and, under *Edwards v. Carpenter,* 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000), a claim of ineffective assistance of counsel may not provide cause for a procedural default if the claim itself has been procedurally defaulted. *See id.* at 453, 120 S.Ct. 1587. Furthermore, when cause has not been shown, the Court need not consider whether actual prejudice has been demonstrated. *See, e.g., Smith v. Murray,* 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Long v. McKeen,* 722 F.2d 286, 289 (6th Cir.1983). In his objec-

tions to the recommendation, the petitioner merely reiterates his arguments in his habeas petition. The Court finds no evidence that the petitioner raised an ineffective assistance of counsel claim to establish "cause" for not objecting to the instructions on first-degree murder, second-degree murder, and reasonable doubt at trial, and there is no basis to excuse him from his procedural default.

■■■ The magistrate judge also recommended that the petitioner has not established that a fundamental miscarriage of justice has occurred to overcome the default. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326–27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851. The petitioner has made no such showing in this case.

The magistrate judge found the remaining claims regarding jury instructions were addressed by the Michigan Court of Appeals and therefore they were not procedurally barred. However, the claims lack merit.

The question on habeas review of jury instructions

is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *see also Henderson v. Kibbe,* 431 U.S.

145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977); *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)(" '[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional] right' "). It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. *Cupp v. Naughten, supra,* 414 U.S. at 147, 94 S.Ct. 396.

*Estelle,* 502 U.S. at 72, 112 S.Ct. 475.

■■■ Thus, to warrant habeas relief, the jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Scott v. Mitchell,* 209 F.3d 854, 882 (6th Cir.), *cert. denied,* 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503 (2000). A habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete because an omission; an incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Fama v. Commissioner of Correctional Services,* 69 F.Supp.2d 388, 397 (E.D.N.Y.1999), *aff'd,* 235 F.3d 804 (2d Cir. 2000).

■■■ The remaining claims for improper jury instructions consist of a claim for improper jury instruction on the aiding and abetting and specific intent. These instructions were not fundamentally unfair. Furthermore, the fact that the instruction did not compare exactly to the state's model jury instructions is not grounds for granting habeas relief. *See Estelle,* 502 U.S. at 71–72, 112 S.Ct. 475.

The trial court gave the following instruction on aiding and abetting:

The law also states that any person who shall personally commit an offense or any person who shall procure, counsel or aid and abet another person in the commission of an offense shall be tried and if found guilty, shall be punished as if he directly committed the offense himself. That's known in the law as "aiding and abetting." Which simply means, anyone who helps or encourages another person to commit a crime is just as guilty as the person who commits the crime.

In other words, you help another person to commit an offense, you are as guilty as the person who actually carries it out. Like, three people go into a bank and hold it up, they're all guilty of holding up the bank.

Suppose somebody plans to do the crime but one person does the planning and he sends the other person out to do the actual field work but he stays behind. The person that does the planning is just a guilty as the person who does the work under the law of aiding and abetting.

Trial Tr. Vol. IV at 90.

The Michigan Court of Appeals stated that its review of "the lower court record demonstrates that the trial court properly instructed the jury that a finding of aiding and abetting could be made only if the jury found that defendant or his accomplice knew that the other had the specific intent to commit a crime." *Williams*, No. 204918, 1999 WL 33447045, *3. The Court does not see how this finding is contrary to Supreme Court precedent.

■ The petitioner also claims that the trial court told the jury that first-degree murder was a specific intent crime, but then failed to explain specific intent and did not instruct that the prosecution had to prove the petitioner's intent beyond a reasonable doubt. The court of appeals stated that

[d]efendant's claim that the trial court failed to explain which side had the burden of proving specific intent has no merit. The trial court's instructions to the jury left no doubt that defendant had absolutely no burdens of proof to satisfy. Similarly, defendant's claim that the trial court did not explain that defendant could not be convicted if there was a reasonable doubt as to his state of mind must also fail. The trial court informed the jury that the prosecution had to prove its case beyond a reasonable doubt.

*Williams*, No. 204918, 1999 WL 33447045, *4. Likewise, the trial court's failure to instruct on specific intent was not unreasonable, nor did it render the petitioner's trial fundamentally unfair. Therefore, the petitioner is not entitled to habeas relief on his last claim.

### III.

Except as modified herein, the Court finds that the magistrate judge's report and recommendation should be adopted and the petition denied. The decision of the state court of appeals affirming the petitioner's convictions was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Furthermore, that court's findings of fact, presumed correct on habeas review, are supported by the trial record. *See* 28 U.S.C. § 2254(d)(2), (e)(1).

Accordingly, it is **ORDERED** that the petitioner's objections to the report and recommendation are **OVERRULED**.

It is further **ORDERED** that the magistrate judge's report and recommendation is **ADOPTED** in part and as supplemented herein.

It is further **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED.**